UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
\_\_\_\_\_

MAURICE MARQUIS BRYANT,

        Plaintiff,

v.

UNKNOWN PLUMM et al.,

        Defendants.
_____/

Case No. 2:24-cv-184

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint as duplicative and, therefore, malicious.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues URF Unit Officers Unknown Plumm and Unknown Robinson in their individual and official capacities.

Plaintiff alleges that, on February 18, 2024, Defendant Plumm wrote Plaintiff a Class II misconduct ticket for disobeying a direct order/insolence because non-party Sergeant King told

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Defendant Plumm to write Plaintiff a ticket. (Compl., ECF No. 1, PageID.4.) Sergeant King stated to Plaintiff: "I'll teach you about writing PREAs." (*Id.*) The following day, Defendant Plumm told Plaintiff to "just sign off" on the ticket or Sergeant King would come after him. (*Id.*) Plaintiff signed off on the ticket. (*Id.*)

On February 29, 2024, Defendant Plumm told Plaintiff, "Keep writing grievances on me and I'll keep making your prison life hell." (*Id.*, PageID.5.) Plaintiff does not describe the grievances that he wrote against Defendant Plumm.

On March 3, 2024, Defendant Robinson wrote Plaintiff two Class III misconduct tickets for using the bathroom during count time and standing in the hallway for an extended period of time. (*Id.*, PageID.9.) Because Plaintiff was already in segregation, the non-party hearing officer told Plaintiff that he was required to give Plaintiff the maximum sanction, but instead dropped one misconduct ticket and gave Plaintiff only 15 days' loss of privileges for the other. (*Id.*)

Plaintiff states that he wrote a grievance against Defendant Plumm on March 18, 2024. (*Id.*) Plaintiff again does not describe the nature of his grievance. (*Id.*) At approximately 7:30 p.m., Defendant Plumm told Plaintiff, "So you think I lied on you with that (DDO) disobeying a direct order and insolence for Sgt. King . . . just wait; you wrote a grievance on me also . . . let the lies continue for you, Mr. Bryant." (*Id.*) That same day, Defendant Plumm wrote Plaintiff a Class III misconduct ticket for excessive noise and "lied on this ticket." (*Id.*)

On March 18, 2024, Defendant Robinson stated loudly to other inmates that they should "beat up and press" Inmate Hedrick "because he's in here for f****** kids" and that there would be no repercussions. (*Id.*) Plaintiff wrote a grievance against Defendant Robinson regarding this incident. (*Id.*)

4

On March 20, 2024, Defendant Robinson wrote Plaintiff a misconduct ticket for passing an unknown object to another prisoner and a second misconduct ticket for standing with the quiet room door open for an extended period of time. (*Id.*, PageID.6.) Defendant Plumm reviewed both tickets. (*Id.*) Plaintiff did not contest the misconduct tickets and non-party reviewing officer Fulgenzi gave Plaintiff "top-lock" as a sanction. (*Id.*)

On March 29, 2024, Plaintiff discovered that Defendant Robinson had shaken down his cell and left it "in shambles." (*Id.*, PageID.7.) Plaintiff requested that Defendant Robinson call a Sergeant or shift command but Defendant Robinson did not, telling Plaintiff only to file a grievance. (*Id.*) Plaintiff was later called to the control center to discuss the shake down, but was told to go back to his unit or he would be sent to "the hole." (*Id.*) Plaintiff wrote a grievance claiming that he was being retaliated against because he had filed grievances and because of his criminal sexual conduct conviction. (*Id.*)

On April 1, 2024, and/or April 2, 2024, "Plaintiff was sent to the hole for nothing". (*Id.*, PageID.6, 8.) Plaintiff alleges that this action was in retaliation for putting a hit on Defendant Plumm, but states that was not true. (ECF No. 1, PageID.6.) Plaintiff does not identify the person who made the decision to order that Plaintiff be moved to segregation.

On April 3, 2024, Plaintiff was called to see the non-party Inspector and non-party Assistant Deputy Warden. (*Id.*, PageID.8.) The Inspector and Assistant Deputy Warden told Plaintiff that they had heard that Plaintiff put "a hit" on Defendant Plumm. (*Id,*) Plaintiff claims that was a lie. (*Id.*) The Inspector and Assistant Deputy Warden told Plaintiff that they wanted to move Plaintiff out of the unit that Defendants Plumm and Robinson worked in often. (*Id.*) Plaintiff told the Inspector and Assistant Deputy Warden that Defendant Plumm gave a known gang member information regarding Plaintiff's criminal sexual conduct conviction and told the gang

5

member to "get [Plaintiff] off the yard" because Plaintiff had been writing grievances, was a nuisance, and was a sex offender." (*Id.*)

While Plaintiff was in segregation, non-party Sergeant Hansen lied during his investigation, stating in his "decision summary" that Plaintiff made threats and had issues with every staff member. (*Id.*, PageID.8–9.)

At some point while Plaintiff was in segregation, non-party Officer Otto asked Plaintiff if Plaintiff wanted to leave segregation. (*Id.*, PageID.10.) When Plaintiff responded that he did not, Plaintiff was required to write a statement as to why he did not want to return to the unit. (*Id.*) In his written statement, Plaintiff explained that Defendant Robinson had put a hit on him. (*Id.*) Plaintiff also wrote grievances against Defendants Plumm and Robinson for getting Plaintiff removed from the unit. (*Id.*)

Based on the foregoing factual allegations, Plaintiff alleges that Defendants Plumm and Robinson violated Plaintiff's First and Eighth Amendment rights. (*Id.*) Plaintiff also claims that Defendants engaged in a conspiracy. (*Id.*, PageID.11.) Plaintiff seeks declaratory and monetary relief. (*Id.*)

This is not the first time that Plaintiff has raised some of these claims. In *Bryant v. Woodgate et al. (Woodgate)*, No. 2:24-cv-122 (W.D. Mich.), Plaintiff sued Defendant Plumm and three other URF employees for First Amendment retaliation and Eighth Amendment violations. In *Woodgate*, Plaintiff alleged that, on February 18, 2024, Defendant King told Plaintiff, "I'll teach you about writing PREAs," and that Defendant King told Defendant Plumm to issue a misconduct ticket for insolence and threatening behavior to Plaintiff. *Woodgate* (Compl., ECF No. 1, PageID.5). Plaintiff alleged that Defendant Plumm told Plaintiff to "just sign off the ticket or [Defendant] King [is going to] come after [you]" and that Plaintiff signed off on the ticket. *Id.* And

6

as in the present action, Plaintiff went on to allege that Defendant Plumm told Plaintiff, "Keep writing grievances on me and I'll keep making your prison life hell." *Id.* (Compl., ECF No. 1, PageID.8). Plaintiff stated that "this was a form of intimidation and retaliation for the grievance" he wrote. *Id.* He asked to speak to the sergeant, "but was almost then taken to the hole for asking for them to tell them about the situation." *Id.*

## II.     Duplicative Complaints

Because the instant complaint repeats many factual allegations and claims that Plaintiff is pursuing in *Woodgate*, the Court must determine whether the complaint is frivolous or malicious. Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. California Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953–54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

Moreover, prisoners who bring civil actions *in forma pauperis* face additional constraints due to statutory barriers when bringing duplicative claims. *See, e.g.*, *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (per curiam) ("[T]he court's power of dismissal in IFP cases under

7

section 1915(d)[2] is broader than in other civil cases under the Federal Rules of Civil Procedure."). The PLRA commands that district courts "shall review . . . as soon as practicable . . . a complaint in which a prisoner seeks redress from a governmental entity or officer" and dismiss it if it "is frivolous, malicious, or fails to state a claim . . . ." 28 U.S.C. § 1915A.

The Sixth Circuit has not provided clear guidance as to the meaning of "malicious" in § 1915A(b)(1) or its analogues in § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c)(2).[3] However, all of the circuits that have confronted the question to conclude that a "duplicative complaint is an abuse of the judicial process and is properly dismissed without prejudice as malicious" for prisoners suing governmental entities and those proceeding *in forma pauperis*. *Daker v. Ward*, 999 F.3d 1300, 1308 (11th Cir. 2021); *accord Day v. Toner*, 530 F. App'x 118, 121 (3d Cir. 2013) ("[A] complaint is malicious where it is abusive of the judicial process and merely repeats pending or previously litigated claims . . . ."); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action may be dismissed under 28 U.S.C. § 1915(d) as malicious." (alteration in original)); *Aziz v. Burrows*, 976 F.2d 1158, 1158–59 (8th Cir. 1992) (confirming rule under former § 1915(d) that a district court may dismiss duplicative complaints as malicious); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (noting that dismissal without prejudice of an action under 28 U.S.C. § 1915 when the complaint "merely repeats pending or previously litigated claims," serves Congress' goal of limiting plaintiffs from filing "frivolous, malicious, or repetitive lawsuits" (citations omitted)); *McWilliams v. Colorado*,

---

[2] Prior to April 26, 1996, the provisions in § 1915(e)(2) were set forth at 28 U.S.C. § 1915(d).

[3] 28 U.S.C. § 1915A requires a court to screen prisoners complaints seeking redress from a governmental entity or officer. Section 1915(e) requires that a court dismiss an action, in whole or in part if it is malicious, where a plaintiff is proceeding *in forma pauperis*. In a related statute, 42 U.S.C. § 1997e(c) requires that a court dismiss an action, in whole or in part if it is malicious, where a prisoner challenges prison conditions under federal law. Frequently, a prisoner who brings a civil rights case is subject to all three.

8

121 F.3d 573, 574 (10th Cir. 1997) ("[R]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." (quotation marks omitted, first alteration in original)); *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981) (explaining that a complaint brought by a pauper "that merely repeats pending or previously litigated claims" is abusive and "[a] complaint plainly abusive of the judicial process is properly typed malicious"); *see also Hurst v. Counselman*, 436 F. App'x 58, 60–61 (3d Cir. 2011) (concluding that the plaintiff's duplicative action evinced an attempt to vex, injure or harass a defendant and was therefore properly dismissed as malicious); *Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir. 2007) (affirming dismissal of a complaint as frivolous and malicious because it "substantially mirror[ed] the prior complaint"); *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (concluding "it is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit" filed by the same plaintiff); *Van Meter v. Morgan*, 518 F.2d 366, 367 (8th Cir. 1975) (affirming the dismissal of a complaint as frivolous where the plaintiff proceeding with pauper status already had filed similar complaints, one of which was currently pending and "deal[t] with issues directly related, if not identical, to these herein").

Therefore, this Court concurs with the uniform practices of the circuits that have confronted the issue: a complaint challenging prison conditions under federal law brought by a prisoner proceeding *in forma pauperis* that repeats pending or previously litigated claims is properly dismissed without prejudice as malicious under the PLRA. Yet, several circuits have further indicated that a complaint need only be *substantially* similar to previous or pending claims for a court to dismiss the complaint as malicious. *See, e.g.*, *Davis*, 234 F. App'x at 874; *Van Meter*, 518 F.2d at 367. For example, notwithstanding permissive joinder under Rule 20(a)(2) of the Federal Rules of Civil Procedure, the Fifth Circuit permits dismissals for malice where a plaintiff brings a

subsequent complaint against new defendants with claims arising out of the same transaction or occurrence as an earlier complaint. *See, e.g.*, *Bailey*, 846 F.2d at 1020, 1021 (affirming the district court's dismissal as malicious of an action alleging similar facts as an earlier action but against a new defendant). Clearly, even some partially duplicative complaints may abuse the judicial process, particularly where a court concludes that the plaintiff intends to vex, injure or harass a defendant.

Dismissing as malicious substantially duplicative or similar complaints serves multiple purposes. First, it conserves judicial resources. Conservation of judicial resources permits courts to identify and resolve other pending matters with urgency including, for example, legitimate claims brought by prisoners who are in imminent danger. Indeed, Congress created the PLRA to address "the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). Dismissals of subsequent but substantially similar complaints as malicious therefore aid judicial economy. *Cf. Kerotest Mfg. Co.*, 342 U.S. at 183.

Second, it limits a vexatious litigant from filing lawsuits with similar factual allegations and claims against the same or overlapping defendants. The PLRA extends a federal court's inherent power to dismiss as frivolous a duplicative complaint, *see e.g.*, *Colo. River Water Conservation Dist.*, 424 U.S. at 817, because it permits a federal court to dismiss as malicious a substantially duplicative complaint, *see Davis*, 234 F. App'x at 874; *Pittman*, 980 F.2d at 995. Substantially duplicative complaints, when filed without good cause, abuse the judicial process and may subject defendants to "the vexation of concurrent litigation over the same subject matter." *Adam*, 950 F.2d at 93.

An example illustrates the point. A prisoner-plaintiff proceeding with pauper status may bring, for example, Claims A, B, and C against a defendant in the first complaint. Suppose that only Claim A survives preliminary screening under 28 U.S.C. § 1915A, and the plaintiff therefore avoids a strike under 28 U.S.C. § 1915(g). While the first action remains pending, the plaintiff may then file a new action with a complaint alleging Claims A, D, and E against the same defendant; and a third action with a complaint alleging Claims A, F, and G against the original defendant. Notwithstanding differences between the complaints, the presence of Claim A would permit all three actions to proceed beyond the preliminary screening required by the PLRA even if only Claim A survived in each. The original defendant would face three separate actions.

Furthermore, absent the ability to dismiss without prejudice substantially similar complaints as malicious, a prisoner-plaintiff may circumvent the three-strikes provision of 28 U.S.C. § 1915(g). Whether inadvertent or deliberate, a plaintiff could be shielded from receiving strikes by appending any new claims he desires to bring and reasserting a previous claim that alleged facts sufficient to state a claim. Such a result would undermine Congress' objectives with the PLRA "to put in place economic incentives that would prompt prisoners to" proceed prudently. *See Hampton*, 106 F.3d at 1286.

Finally, a dismissal without prejudice of a substantially similar complaint would ensure that the plaintiff does not suffer gratuitous harm. *Cf. Strandlund v. Hawley*, 532 F.3d 741, 745–46 (8th Cir. 2008) (interpreting "gratuitous harm" in the context of remedying misjoinder). The plaintiff would remain able to refile a new complaint after eliminating the duplicative claims.

For all of the foregoing reasons, this Court concludes that partially duplicative complaints aimed at vexing, injuring or harassing defendants abuse the judicial process; and, therefore, should be dismissed without prejudice as malicious pursuant to the PLRA.

Plaintiff has brought identical factual allegations and legal claims against Defendant Plumm in both *Woodgate* and in the present action. In addition, the "wrongs" alleged in both cases—First Amendment retaliation and Eighth Amendment violations at URF during February and March of 2024—are the same. As a result, the Court concludes that Plaintiff's allegations in this case as they related to the events of February and March of 2024, sufficiently duplicate the events alleged in *Woodgate*, such that Plaintiff's instant complaint is duplicative and malicious.[4] The Court will dismiss the complaint on that ground. The dismissal is without prejudice to Plaintiff's first-filed claims in *Woodgate* and without prejudice to Plaintiff filing a new complaint raising any non-duplicative claims

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed as duplicative and malicious, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  February 28, 2025                               /s/ *Maarten Vermaat*
                                                                                      Maarten Vermaat
                                                                                      United States Magistrate Judge

---

[4] The fact that Plaintiff adds nonduplicative claims and a new Defendant, Defendant Robinson, does not remediate his inclusion of the duplicative allegations.